UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:16CV-102-JHM

JAMILEH IBRAHIM                                                                                    PLAINTIFF

V.

ABM GOVERNMENT SERVICES, LLC                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, ABM Government Services, LLC, to compel arbitration or, alternatively to dismiss Plaintiff's 42 U.S.C. § 1981 claims pursuant to Fed. R. Civ. P. 12(b)(6) [DN 13]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Plaintiff, Jamileh Ibrahim, filed this action asserting claims for sexual harassment, national origin discrimination, gender discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, 42 U.S.C. § 1981, against Defendant, ABM Government Services, LLC. Plaintiff alleges that she was sexually harassed beginning in November of 2014 while working for Defendant, discriminated against on the basis of her gender and national origin, and then retaliated against after she complained of harassment and discrimination.

Plaintiff, a female born in Jordan, was hired by Defendant in March of 2013 as an Arabic Linguist Cat III to provide language support services to the Department of the Air Force in the Middle East, specifically in Kuwait, Qatar, and Jordan. Plaintiff had previously worked in these three countries with several Air Force detachment units. Plaintiff alleges that in November of 2014, she began to be sexually harassed by Sergeant Kern, a new sergeant assigned to her

detachment unit while working in Jordan. Plaintiff maintains that after rejecting Sergeant Kern's repeated advances, Sergeant Kern reported to the detachment commander, Bradley Byington, that Plaintiff was not doing her job. Commander Byington reprimanded Plaintiff about her job performance. Plaintiff avers that at that time she reported to Commander Byington that Sergeant Kern was sexually harassing her and his behavior was interfering with her ability to do her job. She requested that Sergeant Kern utilize the other available linguist. Commander Byington refused.

Plaintiff alleges that in early January of 2015, she reported the sexual harassment to Alan King, Plaintiff's regional manager at ABM. After additional incidents of harassment and discrimination, Plaintiff alleges that the conduct of both Kern and Byington were reported to the Inspector General by King. King instructed Plaintiff to return home for a two-week vacation and informed Plaintiff that she was being transferred to another assignment. On January 20, 2015, Plaintiff received an email with a new employment contract for a higher paying position in Iraq from Defendant. Plaintiff waited to begin her new assignment and was repeatedly told by Defendant it was delayed because of a Visa issue. According to Plaintiff, in March of 2015, she received a Mutual Arbitration Agreement as part of the new hire packet. She signed the agreement on March 10, 2015, "intending to agree to arbitrate any potential future matters" related to her next assignment. (Response at 2, DN 19.) In April of 2015, Defendant sent Plaintiff to a deployment certification for a week with 17 other non-Jordanian, male translators. She was eventually informed by Defendant that she could not be deployed with the group and had to return home. The male, non-Jordanian translators were deployed to Iraq.

On August 27, 2016, Plaintiff filed this current action against Defendant. Defendant now moves to compel this lawsuit to arbitration. Alternatively, if the Court does not compel this case

to arbitration, Defendant moves to dismiss Plaintiff's § 1981 claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. MOTION TO COMPEL ARBITRATION

The Mutual Arbitration Agreement provides that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, shall govern the agreement. The FAA "'manifests a liberal federal policy favoring arbitration agreements.'" Yaroma v. Cashcall, Inc., 130 F. Supp. 3d 1055, 1061 (E.D. Ky. 2015)(quoting Masco Corp. v. Zurich American Ins. Co., 382 F.3d 624, 626 (6th Cir. 2004)). "Under § 4, when a party is 'aggrieved by the failure of another party to arbitrate under a written agreement for arbitration,' that party 'may petition a federal court for an order directing that such arbitration proceed in the manner provided for' by the contract." Yaroma, 130 F. Supp. 3d at 1061(quoting Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 4) (internal quotation marks omitted)). The FAA "places arbitration agreements on an equal footing with other contracts, . . . and requires courts to enforce them according to their terms." Rent–A–Center, 561 U.S. at 67.

The liberal federal policy favoring arbitration agreement "is not so broad that it compels the arbitration of issues not within the scope of the parties' arbitration agreement." Watson Wyatt & Co. v. SBC Holding, Inc., 513 F.3d 646, 649 (6th Cir. 2008). "'Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" Id. (quoting Bratt Enterprises, Inc. v. Noble International Ltd., 338 F.3d 609, 613 (6th Cir. 2003)). Basic contract law further instructs that "[a]bsent an ambiguity in the contract, the parties' intentions must be discerned from the four corners of the instrument without resort to extrinsic evidence." Cantrell

3

Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002)(citations omitted).

Here, the parties agree that a valid agreement to arbitrate existed between them, but they disagree as to whether the claims arising before the execution of the arbitration agreement on March 10, 2015, are within the scope of the agreement. Plaintiff maintains that she signed the Agreement in anticipation of being deployed on a new assignment. Specifically, Plaintiff contends that she received the Agreement as part of a new hire packet for a position that was to begin in or about May of 2015. According to Plaintiff, the Agreement would not apply to the current matter which was part of an assignment which ended in January of 2015. Accordingly, Plaintiff argues that she did not agree to arbitrate this matter; and, as a result, the Agreement is not enforceable as to these claims because these claims fall outside the Agreement's scope.

The parties' agreement to arbitrate states, in pertinent part:

> Final and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any "Covered Claim" (as the term is hereinafter defined). A "**Covered Claim**" is any claim (except a claim that by law is non-arbitrable) that arises between [Plaintiff] and [Defendant] . . . including but not limited to claims arising and/or relating in any way to my hiring, my employment with, and/or the severance of my employment with [Defendant]. . . . Covered Claims include, but are not limited to, any claim for breach of contract, for any provision of state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination, for unfair competition, for discrimination, harassment, or unlawful retaliation, for violation of the Fair Labor Standards Act, and for violation of the California Labor Code Private Attorneys General Act of 2004 (the "PAGA") or any applicable similar laws, to the full extent permitted by applicable law.

(Mutual Arbitration Agreement ¶ A, DN 14-1.) The Mutual Arbitration Agreement further indicates what the parties agreed that the term "Covered Claims" did not include. Specifically,

> Covered Claims do not include claims for workers' compensation, unemployment compensation benefits, disputes covered by a collective bargaining agreement, claims for unfair labor practices covered by the National Labor Relations Act, claims for employee benefits covered by the Employment Retirement Income Securities Act ("ERISA Plan"), or claims that are not arbitrable as a matter of law. **Covered Claims also do not include any claims that are currently pending in litigation prior to the signing of this agreement.** For purposes of this agreement only, "currently pending litigation" means that a lawsuit has been filed against and served upon the Company.

(Mutual Arbitration Agreement ¶ A, DN 14-1 (emphasis added).)

The Sixth Circuit has previously stated that where an arbitration clause is broadly written, "'only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators.'" Watson Wyatt & Co. v. SBC Holdings, Inc., 513 F.3d 646, 650–51 (6th Cir. 2008)(quoting Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc., 350 F.3d 568, 577 (6th Cir. 2003) (quoting AT & T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)). Given the directives of the Supreme Court and the Sixth Circuit, the Court is "required to give a general presumption of arbitrability and to resolve any doubts in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Watson Wyatt, 513 F.3d at 650 (quoting Masco, 382 F.3d at 627).

Examining the four corners of the Agreement, the Court finds that the dispute over Plaintiff's treatment by ABM during and after her deployment to Jordan encompasses claims arising and/or relating to her employment with ABM, and it thus is encompassed by the Mutual Arbitration Agreement. The complaint alleges that Plaintiff was sexually harassed prior to the date she signed the Agreement and discriminated and retaliated against both before and after she

signed the Agreement.  The record reflects that Plaintiff and Defendant agreed to submit all covered claims to binding arbitration and that a covered claim includes any claim "that arises between [Plaintiff] and [Defendant] . . . including but not limited to claims arising and/or relating in any way to [Plaintiff's] hiring, [Plaintiff's] employment with, and/or the severance of [Plaintiff's] employment with [Defendant]."  The Agreement also provides that covered claims include any claims for "wrongful termination . . . for discrimination, harassment, or unlawful retaliation." (Mutual Arbitration Agreement ¶ A, DN 14-1.)  Further, the Agreement clearly defines which disputes fall outside the scope of the Agreement without regard to whether those claims accrued before or after Plaintiff signed the Agreement.  The text of the Agreement reflects that the claims that fall outside the scope of the Agreement include "any claims that are currently pending in litigation prior to the signing of the agreement." (Id.)  In other words, for the claims in question to be excluded from the Agreement, this lawsuit would have had to be filed and served upon ABM prior to Plaintiff signing the Arbitration Agreement.  (Id.)  Therefore, the Court determines that Plaintiff's claims fall within the scope of the Mutual Arbitration Agreement.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, ABM Government Services, LLC, to compel arbitration [DN 13] is **GRANTED**. The parties shall arbitrate their dispute, and the Clerk shall strike this case from the active docket.

*[Signature]*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

April 26, 2017

cc: counsel of record